IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02730-MEH

WESLEY R. WOLF BROWN,

    Plaintiff,

v.

BECKY SHOE, Supervisor, InstaCheck Unit, Colorado Bureau of Investigation,

    Defendant.

---

## AMENDED[1] ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's Motion to Dismiss [filed February 29, 2016; docket #11]. The Motion is briefed and oral argument would not materially assist the Court in its adjudication. For the reasons that follow, the Court **grants** the Motion.[2]

---

[1] On April 15, 2016, the Court issued an Order granting Defendant's Motion to Dismiss [*see* docket #33], and closed the case [*see* docket #34]. However, at a Scheduling Conference held on April 12, 2016, the Court had granted Plaintiff permission to file a Surreply to the Motion to Dismiss on or before April 18, 2016. *See* Courtroom Minutes, docket #32. Thus, the Court should not have issued its Order before it received and considered the Surreply. When made aware on April 18, 2016, of Plaintiff's intention to file his Surreply, the Court vacated its Order and Final Judgment [*see* dockets ##32-33], and allowed the Surreply and an accompanying "Notice" from Plaintiff to be filed [*see* dockets ##34-35]. The Court has now considered the entirety of Plaintiff's Notice and Surreply and finds they do not alter its analysis or decision; thus, the Court now issues this Amended Order that grants Defendant's Motion to Dismiss and closes the case.

[2] Pursuant to 28 U.S.C. § 636(c) and D.C. Colo. LCivR 40.1(c), the Direct Assignment of Civil Cases to Full Time Magistrate Judges, the parties consented to the jurisdiction of this Court to conduct all proceedings in this civil action. Docket #20.

**BACKGROUND**

I.    **Procedural History**

Plaintiff, proceeding *pro se*, initiated this action on December 16, 2015, filing a Complaint against Defendant, a supervisor for the InstaCheck Unit with the Colorado Bureau of Investigation ("CBI"), for her role in handling the denial of his purchase of a handgun because of his previous felony convictions. Docket #1. U.S. Magistrate Judge Gordon P. Gallagher first reviewed the case on December 22, 2015, denying Plaintiff's request for leave to proceed *in forma pauperis*. Docket #4. Plaintiff then paid his filing fees and filed his operative Amended Complaint on February 3, 2016 [*see* dockets ##7, 8], bringing claims that involve his rights to due process and equal protection and, more broadly, violation of his civil liberties by being denied a firearm. *See generally* Amended Complaint, docket #8. Defendant filed the current Motion on February 29, 2016, (docket #11), and briefing was completed on April 4, 2016. Dockets ## 19, 27.

II.   **Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff against the Defendant in the operative Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff attempted to purchase a firearm from the Shootest Pistol Range in Englewood, Colorado, on November 9, 2015. Amended Complaint, docket #8 at 15. He was denied the purchase of a firearm on November 20, 2015, without a reason for the denial [*id.* at 4] and appealed the decision on November 21, 2015 [*id.* at 17-18]. With that appeal, he included a handwritten letter expressing his belief that Colo. Rev. Stat. § 18-12-108 allows those who are felons to possess

firearms, so long as it has been 10 years since their release from supervision. Amended Complaint, docket #8 at 19. Plaintiff's letter also indicated his concern that he was not immediately told the reason for the denial "so that [he] could properly appeal the denial." *Id*. His letter included a recitation of his criminal history, showing he had not been supervised for the previous 10 years. *Id*. at 19-24.

On December 1, 2015, Plaintiff was notified by letter from Michael S. Rankin, director of the CBI, and signed by Defendant on behalf of the the InstaCheck Unit of the CBI, that the attempt to purchase a firearm remained denied. *Id* at 25. The letter stated as follows:

> In response to your "Appeal of Denial of Firearm Transfer[,]" please be advised that your attempted purchase was denied for the following reason(s):
>
> Your state and/or federal criminal history record shows an arrest made by Long Beach Police Department in Long Beach, California[,] on July 24, 1985[,] that resulted in a conviction for Felony Possession of Marijuana for Sale.
>
> Your state and/or federal criminal history record shows an arrest made by Long Beach Police Department in Long Beach, California[,] on December 19, 2000[,] that resulted in a conviction for Felony Grand Theft.
>
> According to federal law (18 U.S.C. § 922(d)(1)) and/or state law (CRS [§]18-12-108), the transfer of a firearm to a person who has been convicted of a crime punishable by imprisonment/probation for a term exceeding one year is prohibited, regardless of whether the crime was a felony or a misdemeanor.
>
> *CRS 18-12-108 states that possession of a weapon by a previous offender is always illegal. However, if you are found to be in possession of a weapon within 10 years of your original conviction, there is a more serious penalty.*
>
> This information is being furnished to the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives.
>
> Your appeal is denied.

Amended Complaint, docket #8 at 25 (emphasis in original). The same day – December 1, 2015 – Defendant and Mr. Rankin sent another letter to Plaintiff, this time reading:

> In response to your "*Appeal of Denial of Attempted Firearm Transfer*[,]" be advised that a check of FBI files during the required NICS check turned up the following information:
>
> You have been adjudicated a Mental Defective in Denver County District Court in Denver, Colorado[,] case number D0682009MH000171. NRI #U1563788301.

Amended Complaint, docket #8 at 26.

Plaintiff seeks a declaratory judgment that: (1) he should have been advised of the reasons for the denial at the time of the denial; (2) Colo. Rev. Stat. § 18-12-108 is a "statutory reinstatement of the right to keep and bear arms;" (3) an "adjudication of a mental defect cannot be held against him and that the erroneous information be expunged;" (4) the "approval of the transfer [of the firearm] be made"; and (5) Defendant be required to change the Colorado Code of Regulations to honor due process, restore Second Amendment rights, and advise of remedies. Amended Complaint, docket #8 at 13-14. Plaintiff also seeks compensatory damages for his time in conducting legal research and bringing this Complaint, including fees paid to the Court. *Id*. at 14.

## LEGAL STANDARDS

### I. Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.* (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must

4

be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Pueblo of Jemez*, 790 F.3d at 1151.  Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted).  The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Amended Complaint's factual allegations.

## II.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis.

First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

### III.  Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's pleadings "liberally" and hold the pleadings "to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Id.* (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal

authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall*, 935 F.2d at 1110; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## **ANALYSIS**

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge [may] be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

### I.   **Sovereign Immunity**

Plaintiff does not clarify whether he is suing Defendant in her official capacity, individual capacity, or both. *See generally* Amended Complaint, docket #8. The Court's analysis will address both, starting with official capacity. Defendant argues she is absolutely immune from liability for any official-capacity claims pursuant to the doctrine of sovereign immunity. Motion, docket #11 at 3-4. Plaintiff does not respond to this argument. *See generally* Response, docket #19.

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a

7

federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of their federal rights. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff specifically seeks monetary damages and declaratory relief from Defendant, an employee of the State of Colorado; to the extent he seeks such damages against Defendant in her official capacity, his claims are barred as the Court lacks subject matter jurisdiction. Thus, the Defendant's Motion will be granted as to any official-capacity claims.[3]

---

[3]Plaintiff's request to change the Colorado Code of Regulations appears to seek prospective injunctive relief. *See Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1232-33 (10th Cir. 2004). This request brought against Defendant in her official capacity would not be barred by the doctrine of sovereign immunity; however, Plaintiff would still need to state a plausible claim for relief for that request not to be dismissed, which he fails to do, as detailed below.

## II.     Qualified Immunity

Defendant also asserts she is entitled to qualified immunity on the Eighth Amendment claim – generally used in cases regarding deprivation of civil liberties – against her to the extent Plaintiff brings such a claim against Defendant in her individual capacity. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 232-35; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, the Court will examine first whether Plaintiff has alleged sufficient facts supporting a plausible claim that Defendant violated Plaintiff's constitutional rights. Defendant argues that Plaintiff's allegations support the fact that Defendant acted in accordance with federal and state law in denying a convicted felon a firearm. Motion, docket #11 at 9. Therefore, Defendant asserts, and the Court agrees, that the analysis ends there, as Plaintiff cannot establish the first element in the qualified immunity analysis because the allegations establish Defendant in fact followed the law and did not violate any of Plaintiff's constitutional rights.

As a convicted felon, Plaintiff has no constitutional right to a firearm as federal law prohibits such persons from having firearms. *See* 18 U.S.C. § 922(g)(1). That statute makes it unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. *Id.* Additionally, Colorado law does not restore a convicted felon's right to possess a firearm. *See* Colo. Rev. Stat. § 18-12-108. The Colorado law – the source of much confusion on the part of Plaintiff – merely provides more serious punishment to a previous felon if he or she were to be in possession of a firearm within 10 years of his or her conviction. *Id.* Plaintiff relies on an older version of the Colorado statute prior to its 1994 amendment, under which he might have been allowed to possess a firearm after 10 years had passed. Response, docket #11 (citing *United States v. Hall*, 20 F.3d 1066 (10th Cir. 1994)). However, the applicable statute is that in effect at the time a plaintiff completed his sentence. *United States v. Peterson*, 277 F. Supp. 2d, 1089, 1094 (D. Colo). In viewing that particular version, the Tenth

Circuit has stated that the wording of the Colorado statute, as amended, "absolutely and permanently banned felons from possessing firearms," specifically distinguishing the amended language from the previous version reviewed in *Hall*. *Martin v. Hilkey*, 460 F. App'x 760, *761-62 (10th Cir. 2012).

Plaintiff's Amended Complaint indicates he knew he was denied the transfer of the firearm because of his criminal background, which included two felonies in Long Beach, California – one in 1985, and the other in 2000. *See* Amended Complaint, docket #8 at 19-21, 25. The CBI letter discussing his denial of the transfer of a firearm states the reason for the denial was based on these two felonies – the latter of which occurred in 2000, well beyond the 1994 amendment of the Colorado statute that denies felons a right to a firearm forever, per *Martin*.

Separate from that denial letter, the CBI provided an additional letter to Plaintiff noting that Plaintiff had also been adjudicated a "Mental Defective" in a case in Denver County District Court. *Id*. at 26. Plaintiff essentially argues this was error in that either he was not adjudicated mentally defective, or the adjudication did not meet the definition for being mentally defective, which he asserts must include having been committed to a mental institution. Response, docket #19 at 9. Because Plaintiff indicates he was not ever committed as such, he says the denial of the firearm was erroneous and violated his constitutional rights. *See generally* Response, docket #19. Plaintiff thus brings his case based on 18 U.S.C. § 925A, which provides the "remedy for erroneous denial of firearm" as follows:

> Any person denied a firearm pursuant to subsection(s) or (t)
> (1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system []; or
> (2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,

11

>may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the Untied States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be.

18 U.S.C. § 925A.

On these facts, the Court finds no constitutional violation occurred. While Plaintiff was advised that the background check had turned up additional information indicating he had been adjudicated "Mentally Defective," the basis of the denial was his felonious background – which was proper pursuant to the law. *See* Amended Complaint, docket #8 at 25. Thus, the allegations reflect that no constitutional violation occurred, giving Defendant qualified immunity against the individual claims brought by Plaintiff, leading the Court to conclude Plaintiff fails to state a plausible claim for relief.

**III.    Remaining Issues**

The Court is unpersuaded by Plaintiff's other arguments as well, specifically those asserting that Defendant violated Plaintiff's due process and equal protection rights. *See generally* Amended Complaint, docket #8. No procedural due process is required if a plaintiff had no protected liberty or property interest at issue. *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569 (10th Cir. 1996). Because of his status as a felon, Plaintiff had no such right, as discussed above. Still, Plaintiff here received a great deal of due process: he received notice that he was denied the firearm, had a right to appeal that process, and was provided information regarding that denial. Regarding equal protection, Plaintiff fails to show, as required, that he was treated differently than another similarly situated person without adequate justification for that disparate treatment. *See City of Cleburne v. Cleburne Living Ctr*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*,

927 F.2d 1111, 1118 (10th Cir. 1991). Simply put, the allegations state no plausible due process or equal protection violations in this case.

## **CONCLUSION**

Accordingly, the Court finds Defendant is entitled to sovereign immunity and qualified immunity, and all other claims and arguments referenced are without merit. Consequently, the Court **grants** Defendant's Motion to Dismiss [filed February 29, 2016; docket #11].

Entered and dated at Denver, Colorado, this 22nd day of April, 2016.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge